# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| GEORGE MATSON, | : | Civil Action No. 3:10-CV-631 |
| --- | --- | --- |
| Plaintiff, | : | (Judge Nealon) |
| v. | : | (Magistrate Judge Carlson) |
| SCRANTON POLICE DEPT., OFFICER BRETT GRIFFITHS, OFFICER PAUL STAFURSKY, and LIEUTENANT MARTY CROFTON, | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

In this civil action, Plaintiff George Matson has made a number of very general allegations that relating to an incident that he claims occurred on October 27, 2008, at the headquarters of the Scranton Police Department. Specifically, Plaintiff alleges that Defendant Brett Griffiths, a police officer with the Scranton Police Department, falsely claimed to be a victim of assault by Plaintiff, and then pushed Plaintiff into a cell, causing Plaintiff to fall. (Compl. at 2.) Plaintiff also claims that another officer, Defendant Paul Stafursky, filed a criminal complaint against Plaintiff charging him with aggravated assault. (Id.) Lastly, Plaintiff alleges that a third defendant,

Lieutenant Marty Crofton, "permitted the police criminal complaint of aggravated assault to be filed against me after witnessing the action of Brett Griffiths." (Id.)

In terms of the relief he seeks for the foregoing allegations, Plaintiff is requesting "the compensatory damages [he is] entitled to," and, apparently, for the Court to view certain electronic surveillance video footage from the booking area of the Scranton Police Department. We interpret Plaintiff's request in this regard to be a suggestion that video surveillance footage would help to substantiate his claims that he was assaulted at the police station, and that he did not assault Brett Griffiths.

Defendants have moved to dismiss the complaint in its entirety, and have supported their motion with a brief. (Docs. 13, 14.) On July 15, 2010, we entered an order directing Plaintiff to file a response to Defendants' motion on or before July 30, 2010. (Doc. 15.) Plaintiff has not complied with this order, and has not responded with a timely – or untimely – brief in response to the motion. Instead, Plaintiff filed two motions seeking to have the Court appoint counsel willing to represent him in this civil action (Docs. 16, 17), both of which were denied in an order entered on August 2, 2010 (Doc. 18). On August 19, 2010, Plaintiff filed a letter, which sets forth in more detail than the complaint the nature of Plaintiff's claims.[1] Local Rule

---

[1] We are mindful that the forms provided to Plaintiff instructed him to "[s]tate . . . as briefly as possible the facts of [his] case." (Compl. at 2.) Nevertheless, as will be discussed, Plaintiff's complaint is simply too abbreviated and vague to set forth a cognizable cause of

2

7.6 provides that any party who fails to submit a brief in opposition to a motion "shall be deemed not to oppose such motion," and we submit that Plaintiff's failure to respond meaningfully to Defendants' motion should result in his deeming not to oppose it. However, we have also examined the merits of Defendants' pending motion. As explained below, we find that Defendants' motion should be granted on its merits, but we recommend that Plaintiff should be given leave to amend his complaint in order to cure the deficiencies identified in this report.

II. **STANDARD OF REVIEW**

Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for assessing the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently described the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards

---

action, and we will recommend that the Court grant Defendants' motion to dismiss, and provide Plaintiff with leave to amend the complaint to include additional allegations and information in support of his claims, including the information that is contained in his letter filed with the Court on August 19, 2010. (Doc. 19.)

3

> have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983) As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly,

4

the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. at 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level

5

of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

These heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether the complaint states one or more valid causes of action against the named defendants. Conducting this threshold legal analysis we find that Plaintiff's allegations are insufficient to state a cause of action.

### III. DISCUSSION

Other than to indicate that he is bringing his claims under 42 U.S.C. § 1983, Plaintiff does not articulate in any way the nature of the claims he is pursuing in this action. In fact, the following represents the entirety of the claims that Plaintiff appears to be making in this case, all of which arose out of an incident in the booking

6

area of the Scranton Police Headquarters that Plaintiff claims occurred on October 27, 2008:

> Brett Griffiths – Claimed to be a victim of Aggravated Assault. Pushed me from behind causing me to fall face down into a holding cell. This incident was recorded by electronic surveillance equipment. . . .
> Paul Stafursky – Filed Police Criminal Complaint of Aggravated Assault against me. Complaint/Incident Number - 20081027M8080; Lackawanna County Court of Common Pleas, Case #08-CR-2994.
> Marty Crofton – Permitted the Police Criminal Complaint of Aggravated Assault to be filed against me after witnessing the action of Brett Griffiths.

(Compl. at 2.) Reading these allegations liberally in Plaintiff's favor, we interpret him to be claiming that Brett Griffiths assaulted him without provocation, and that Defendants Griffiths, Stafursky, and Crofton individually and collectively caused criminal charges to be filed against him maliciously, knowing that there was no basis to charge Plaintiff with aggravated assault. We also interpret Plaintiff's complaint to include a claim for excessive force against Defendant Brett Griffiths. We will address these claims separately.

### A. **Malicious Prosecution**

Plaintiff has brought his claims in this case under 42 U.S.C. § 1983, alleging constitutional violations by state actors, and, therefore, the claim for malicious prosecution that he has brought in this case necessarily rests upon an alleged violation of the Fourth Amendment's prohibition of unreasonable searches and seizures.

Albright v. Oliver, 510 U.S. 266, 273-74 (1994). In order to prove malicious prosecution in the context of a claim brought under 42 U.S.C. § 1983, for asserted violations of the Fourth Amendment, a plaintiff bears the burden of proving that:

> (1) [T]he defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding

Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (internal quotations and citation omitted). In order to satisfy the second element regarding favorable termination of the criminal proceeding,

> A plaintiff may attempt to indicate his innocence by demonstrating that his prior criminal proceeding terminated in one of the following ways: "(a) a discharge by a magistrate at a preliminary hearing, or (b) the refusal of a grand jury to indict, or (c) the formal abandonment of the proceedings by the public prosecutor, or (d) the quashing of an indictment or information, or (e) and acquittal, or (f) a final order in favor of the accused by a trial or appellate court.

Id. at 187.

In this case, Plaintiff's complaint fails adequately to allege all of the essential elements of a cause of action for malicious prosecution. Interpreting the complaint broadly, Plaintiff appears to claim that Defendants helped to commence criminal

charges against Plaintiff, that the charges lacked probable cause, and that Lackawanna County District Attorney later dismissed the charges, thereby causing the proceeding to end his favor. However, Plaintiff does not allege that he "suffered [a] deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Id. Indeed, it appears from the complaint and Plaintiff's subsequent submissions that he was in custody at the time that the criminal charges that form the basis for this action were filed against him. Indeed, we find that any fair reading of Plaintiff's complaint suggests that Plaintiff was in custody of the Scranton Police Department, and was in the process of being booked on other unspecified charges, at the time that the incidents alleged in the complaint occurred.[2] Thus, we find that not only has Plaintiff failed to allege that he suffered a deprivation of liberty as a result of the charges brought against him, but the allegations in the complaint appear to show that Plaintiff was already in custody at the time of the incidents in question, and that he remains in custody on matters that are not identified in the pleadings.

Because Plaintiff has failed to allege the elements of a claim for malicious prosecution for asserted Fourth Amendment violations, we will recommend that the Court grant Defendants' motion to dismiss. However, we further recommend that the

---

[2] We note that Plaintiff is presently incarcerated at the Lackawanna County Prison.

Court grant Plaintiff an opportunity to amend his complaint within a reasonable period of time. We have identified in this report the necessary elements of a claim for malicious prosecution, and Plaintiff – who is proceeding *pro se* – may be able to determine whether he is able to allege and prove the requisite elements of this claim. We note that on August 19, 2010, Plaintiff submitted a letter to the Court in which he outlined clearly his theory of this case, and made a number of factual recitals that do not appear anywhere in the complaint itself. Indeed, the August 19 letter to the Court is a more cogent and complete document than the complaint, and puts forward a more thorough explanation of Plaintiff's intended claims and the factual allegations in support of them. To the extent that Plaintiff is granted leave to amend his complaint to cure the deficiencies we have identified, it is recommended that he incorporate the recitals made in his August 19 letter, as well as any other truthful averments that may support his claims.[3]

---

[3] We do not offer any opinion as to whether a complaint that incorporated the allegations contained in Plaintiff's August 19 letter would be sufficient to state a claim for malicious prosecution. In this regard, we note that Plaintiff must still allege and demonstrate that he suffered a deprivation of liberty as a result of the charges that are claimed to have been maliciously brought. In the complaint filed, Plaintiff did not make such an allegation, and we have concluded that Plaintiff's complaint suggested that he was already in custody at the time the charges against him were brought.

B. **Excessive Force**

Although the complaint contains virtually no factual assertions to substantiate a claim for excessive force, it does appear that Plaintiff is attempting to bring an excessive force claim against Defendant Griffiths for pushing Plaintiff into a jail cell, and causing Plaintiff to fall. Although Plaintiff was apparently aggrieved by Defendant Griffith's alleged conduct, he does not claim that he was injured or hurt as a result. Given the paucity of Plaintiff's allegations offered to support his claim for excessive force, we find that it should be dismissed.

The Supreme Court has instructed that

> all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

Graham v. Connor, 490 U.S. 386, 395 (1989). In contrast to this standard applicable to free citizens, the United States Court of Appeals for the Third Circuit has instructed that courts should apply the Due Process clause of the Fourteenth Amendment to the United States Constitution to protect pretrial detainees from excessive force. See Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Because it appears that Plaintiff had already been arrested and was in the

process of being booked and jailed at the time of the incidents in question, it appears that Plaintiff's claims for excessive force arose during a time he was a pretrial detainee, and are, therefore, properly analyzed under the Due Process Clause.

In order for a pretrial detainee to prove a claim for excessive force, he must demonstrate that the force used amounted to a wanton infliction of punishment, as opposed to an amount rationally related to exercising control. Fuentes v. Wagner, 206 F.3d 335, 342 (3d Cir. 2000); see also Bell v. Wolfish, 441 U.S. 520, 535 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think the proper inquiry is whether those conditions amount to punishment of the detainee.").

Different standards apply to claims of excessive force brought by convicted criminal defendants, and these standards are applicable under the Eighth Amendment's guaranteed right to be free from cruel and unusual punishment. See Whitley v. Albers, 475 U.S. 312, 318 (1986) ("The Cruel and Unusual Punishments Clause was designed to protect those convicted of crimes and consequently the Clause applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."). These protections do not apply until "after conviction and sentence." Graham, 490 U.S. at 392 n.6. However, under

the Fourteenth Amendment, a pretrial detainee is entitled "at minimum, [to] no less protection" than a sentenced inmate is entitled to under the Eighth Amendment. Fuentes, 206 F.3d at 344 (quoting Colburn v. Upper Darby Twp., 838 F.2d 663, 668 (3d Cir. 1988)).

Factors relevant to an excessive force inquiry governed by the Eighth Amendment include "the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citations omitted). An inmate need not prove that the harm he suffered was sufficiently serious in order to make out a constitutional claim where excessive force was used, as absence of injury does not necessarily foreclose the inquiry. Id.; see also Brooks v. Kyler, 204 F.3d 102, 104 (3d Cir. 2000) ("Following Hudson's focus on the force used, as opposed to the injury inflicted, we conclude that although the degree of injury is relevant for any constitutional violation analysis, there is not a fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force").

At the same time, courts have held that the constitution does not protect an inmate against an objectively de minimis use of force, provided that the use of force

is not "'repugnant to the conscience of mankind.'" Whitley, 475 U.S. at 327 (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also Lindsey v. O'Connor, 327 F. App'x 319, 321 (3d Cir. 2009); Reyes v. Chinnici, 54 F. App'x 44, 48 (3d Cir. 2002) ("There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically."). In other cases in this circuit, allegations of conduct that appear to have been more serious than the single shove that Plaintiff complains about in this action have been deemed de minimis. See, e.g., Reyes, 54 F. App'x at 48 (corrections officer punched inmate to avoid being spit on); Thomas v. Ferguson, 361 F. Supp. 2d 435, 439-41 (D.N.J. 2004) (alleged conduct was not 'repugnant to the conscience of mankind' where an inmate alleged he was punched and shoved by corrections officers). As a leading appellate court once stated, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).

Against the foregoing legal considerations, we find that Plaintiff has simply failed to allege sufficient facts to support a claim that Defendant Griffiths violated Plaintiff's due process rights as a pretrial detainee to be free from excessive force. Plaintiff's pleading is devoid of almost any detail. Plaintiff has pleaded only that on

a single occasion Defendant Griffiths shoved him from behind, and that the push caused him to fall face down in a holding cell within the police station. Plaintiff does not claim that he suffered even a minor injury as a result of being pushed. Upon consideration, we conclude that Plaintiff has not pleaded facts to support a claim that Defendant Griffiths' conduct was "repugnant to the conscience of mankind," and Plaintiff's claim for excessive force should be dismissed.

However, as with Plaintiff's claim regarding malicious prosecution, we will recommend that the Court permit Plaintiff to amend his claim for excessive force to the extent he wishes to pursue it, and has additional facts to pleas in support of such claim. *Pro se* plaintiffs should generally be afforded an opportunity to amend their pleadings, see Fletcher-Hardee Corp. v. Pote Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In consideration of these legal standards, and because we do not find it indisputably clear that granting Plaintiff leave to amend would be futile or result in delay, we recommend that the Court permit Plaintiff to amend his complaint to include additional factual allegations in support of his claims, and to address the deficiencies that have been identified in this report.

## C. Matson's Procedural Default Warrants Dismissal of This Action.

Finally, Matson has defaulted on an important procedural deadline in the course of this litigation. This procedural default frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and warrants dismissal of the action at this time. Specifically, Matson has failed to timely respond to this motion to dismiss. Matson was warned of the implications of failing to reply to defense motions when he was provided with the Standing Order of this Court, (Doc. 4) and given a copy of Local Rule 7.6 of the Rules of this Court which imposes an affirmative duty on the plaintiff to respond, and provides that:

> Any party opposing any motion shall file a responsive brief, together with any opposing affidavits, deposition transcripts or other documents, within fifteen (15) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within five (5) days after service of the motion. <u>Any respondent who fails to comply with this rule shall be deemed not to oppose such motion</u>.

Local Rule 7.6 (emphasis added)(Doc. 5.)

Similarly, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: " If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." F. R. Civ. P. 41(b). Decisions regarding

dismissal of actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190. Recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, an assessment of a number of the Poulis factors weighs in favor of dismissing this action, albeit without prejudice to the filing of a timely and properly supported amended complaint. At the outset, it is clear that Matson, as a *pro se* litigant bears personal responsibility for failing to timely file a response to this motion. Matson's failure to file a response has delayed this litigation, to the prejudice of the Defendants, and that delay is wholly unexplained at present.

Thus, Matson's procedural default justifies sanctions which may include dismissal of this action. However, we recognize in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Because we do not find it indisputably clear that granting Plaintiff leave to amend would be futile or result in delay, we recommend that the Court dismiss this action without prejudice, and permit Plaintiff to amend his complaint to include additional factual allegations in support of his claims, and to address the deficiencies that have been identified in this report.

## IV. **RECOMMENDATION**

For the reasons set forth above, it is recommended that the Court GRANT Defendants' motion to dismiss Plaintiff's complaint (Doc. 13), and that the Court grant Plaintiff leave to amend his complaint in order to plead additional facts in support of his claims and to address the pleading deficiencies that we have identified and discussed in this report.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with instructions.

                                                  ***S/Martin C. Carlson***
                                                  Martin C. Carlson
                                                  United States Magistrate Judge

Dated: September 15, 2010.